UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLLEGESTREET IMPORT & EXPORT (TINAJIN) CO., LTD. and JIN ZHANG<br><br>          Plaintiffs,<br><br>     -v-<br><br>LOYALIST, LLC,<br><br>          Defendant. | 25-cv-8494 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

     In this removed case, plaintiffs CollegeStreet Import & Export (Tinajin) Co., Ltd. ("CollegeStreet") and its CEO, Jin Zhang ("Zhang"), assert various breach of contract and tortious interference with contract claims against defendant Loyalist, LLC ("Loyalist"), in connection with a business deal between CollegeStreet and TL x HF, LLC ("TL x HF"), Loyalist's wholly owned subsidiary. Defendant seeks to compel arbitration of plaintiffs' claims or, in the alternative, to dismiss them. Plaintiffs, for their part, seek to remand the action to New York state court.

     By Bottom-Line Order dated December 19, 2025, the Court granted defendant's motion to compel arbitration with respect to Zhang's claims and granted plaintiffs' motion to remand with respect to CollegeStreet's claims. The Court also denied defendant's motion to dismiss without prejudice. This Opinion sets forth the reasons for that Order.

1

## I.    Background[1]

### A. Factual and Procedural Background

This dispute dates to 2018 when defendant Loyalist established a new company, TL x HF, LLC ("TL x HF"), to take over the business of the now-defunct college apparel company, Hillflint, Inc. ("Hillflint"). Compl. ¶¶ 2, 8, ECF No. 1-1. At the time, Hillflint owed $650,000 to CollegeStreet, a Chinese export company specializing in collegiate apparel that had supplied Hillflint with millions of dollars' worth of such apparel between 2016 and 2018. Id. ¶¶ 11-13. To resolve that debt, TL x HF and CollegeStreet entered into an agreement (the "Transfer Agreement") on November 6, 2018. Id. ¶¶ 15, 17. The Transfer Agreement provided that TL x HF would assume $350,000 of Hillflint's debt (the "Assumed Obligation") and would transfer $350,000 of its equity in its parent company, Loyalist, to CollegeStreet or to CollegeStreet's CEO, Jin Zhang. Id. ¶ 16. In exchange, CollegeStreet signed a release in favor of Hillflint, forgiving the $650,000 owed. Id. ¶ 17.

The Transfer Agreement further provided that TL x HF would:

- Make "all reasonable best efforts" to remit payments to CollegeStreet on the Assumed Obligation by December 31, 2018, and to pay the Obligation in full by January 31, 2021;
- Grant CollegeStreet a "right of first refusal" on future production orders;
- Make "best efforts to provide liquidity" on the $350,000 in equity; and

_____

[1] Where relevant, facts are drawn from the complaint and accepted as true for the purposes of the motion to dismiss. Anemone v. Metropolitan Transp. Auth., 410 F. Supp. 2d 255, 261 (S.D.N.Y. 2006).

- Pay CollegeStreet an additional "revenue share" based on a formula set forth in the contract.

Id.

On March 1, 2019, in partial satisfaction of TL x HF's obligations under the Transfer Agreement, Loyalist transferred 343,238 units of its common ownership stock to Zhang. To effectuate the transfer, Loyalist and Zhang both signed a Common Unit Purchase Agreement and Release ("CUPAR Agreement"). Id. ¶ 19; see also CUPAR Agreement, ECF No. 1-4. The CUPAR Agreement included a provision in which Zhang "acknowledge[d] that [she] (i) ha[d] read the [Loyalist] LLC Agreement, (ii) accept[ed] and agree[d] to be bound by the terms [of] the [Loyalist] LLC Agreement, (iii) assume[d] all of the rights and obligations of a Member of the Company and (iv) has executed the [Loyalist] LLC Agreement." See CUPAR Agreement § 1(b).

The Loyalist LLC Agreement, in turn, included an arbitration clause, providing, in pertinent part, as follows:

> Any controversy, dispute, or claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement or any agreement or other instrument executed pursuant hereto or otherwise arising out of the execution of any of the foregoing, including, without limitation, any claim based on contract, tort, or statute, shall be resolved or determined, at the request of any party, by arbitration conducted in Boston, Massachusetts, in accordance with the then-existing Rules for Commercial Arbitration of the American Arbitration Association. Any judgment or award rendered by the arbitrator will be final, binding and non-appealable, and judgment may be entered by any State or Federal court having jurisdiction thereof. The arbitrator shall be required to decide the controversy in accordance with applicable substantive law. Any controversy concerning whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this Section 14.10 shall be determined by the arbitrator.

Third Amended and Restated Limited Liability Company Agreement ("Loyalist LLC Agreement") § 14.10, ECF No. 1-5.

Thereafter, TL x HF made no further attempts to fulfill its remaining obligations under the Transfer Agreement. Specifically, TL x HF did not repay the $350,000 Assumed Obligation by either of the deadlines in the contract, Compl. ¶ 38, did not provide liquidity to Zhang on her equity in Loyalist, id. ¶ 44, and failed to give CollegeStreet a right of first refusal on production orders or to share the revenues specified in the Agreement, id. ¶ 46. Instead, TL x HF used its funds to pay the expenses of its parent company, Loyalist, leaving it with insufficient assets to meet its obligations to CollegeStreet and Zhang under the Transfer Agreement. Id. ¶¶ 41, 43.

In March 2023, CollegeStreet first attempted to take legal action, filing suit against Loyalist and TL x HF in California state court (the "California Action"). See CollegeStreet Import & Export (Tianjin) Co. Ltd. v. XL x HF LLC, et al., No. 23-CV-028584. CollegeStreet asserted in the California Action claims for breach of contract and violation of California's unfair competition law. That action was ultimately dismissed without prejudice at CollegeStreet's request. See Compl. ¶¶ 48-49.

On June 12, 2024, CollegeStreet filed a new action (the "SDNY Action"), this time in the Southern District of New York -- also assigned to this Court -- naming as defendants TL x HF and Matthew Ritz, the manager of TL x HF and Loyalist. Loyalist was named as a nominal defendant. CollegeStreet subsequently amended the complaint

4

to add Zhang as a plaintiff. See CollegeStreet Import & Export (Tianjin) Co. Ltd. v. TL x HF, LLC ("CollegeStreet I"), 777 F. Supp. 3d 238, 244 (S.D.N.Y. 2025).

The SDNY Action asserted three claims. First, CollegeStreet asserted a claim for breach of contract against TL x HF. Second, CollegeStreet asserted against both defendants a violation of California's unfair competition law. And, finally, Zhang -- "both derivatively on behalf of Loyalist and individually" -- asserted a claim for breach of fiduciary duty against Ritz. Id. The first two claims pertained to TL x HF's alleged breach of the Transfer Agreement. The fiduciary-breach claim pertained to allegations that Ritz had breached his fiduciary duty as a manager of Loyalist by, among other things, causing Loyalist to incur expenses on TL x HF's behalf. Id. at 244-45.

Defendants moved to dismiss the action or, in the alternative, to compel arbitration of plaintiffs' claims, pointing to the arbitration provision contained in the Loyalist LLC Agreement. The Court granted the motion to compel arbitration of Zhang's fiduciary-breach claim, agreeing with defendants that Zhang had either acceded to the arbitration agreement by entering into the CUPAR Agreement or, as a member of Loyalist, was independently bound by the LLC Agreement as a matter of Delaware corporate law. Id. at 247-48. The Court also concluded that Zhang's fiduciary-breach claim fell within the scope of that arbitration clause. Id.

As to CollegeStreet's remaining claims against TL x HF and Ritz, the Court concluded that the arbitration agreement did not apply. Id. at 250-51. The Court reasoned that, unlike Zhang, CollegeStreet was not a party to the Loyalist LLC Agreement, nor a member of Loyalist, and the Court also rejected defendants' arguments for binding CollegeStreet to the arbitration agreement as a non-party. Additionally, the Court concluded that, assuming hypothetically that CollegeStreet could have been bound by the arbitration agreement, neither of CollegeStreet's claims would fall within the arbitration agreement's scope. Id. The Court therefore declined to compel arbitration of CollegeStreet's claims.

Finally, the Court dismissed the California unfair competition claim, leaving CollegeStreet's single breach of contract claim against TL x HF remaining. Id. at 253. On April 18, 2025, however, TL x HF filed for bankruptcy, and, as a result, the proceeding was stayed. See ECF Nos. 51-52, No. 24-cv-4522 (JSR). To date, CollegeStreet has not recovered from TL x HF in connection with its alleged breach of the Transfer Agreement.

B. **The Instant Action**

On August 27, 2025, CollegeStreet and Zhang filed a new action, this time in New York state court ("the New York Action"). The complaint recites roughly the same factual allegations as in the stayed SDNY Action, focusing on the alleged breach of the Transfer Agreement. However, unlike the SDNY Action, the New York Action names Loyalist, not TL x HF, as the defendant.

The complaint asserts three causes of action against Loyalist: (1) breach of contract on behalf of CollegeStreet in connection with various alleged breaches of the Transfer Agreement; (2) breach of contract on behalf of Zhang in connection with the failure to make "reasonable efforts" to provide Zhang with liquidity on her Loyalist shares; and (3) on behalf of both plaintiffs, tortious interference with contract based on Loyalist's dissipation of TL x HF's assets such that it was unable to meet its obligations under the Transfer Agreement.

As to the breach of contract claims, plaintiffs allege that, even though the Transfer Agreement was executed between CollegeStreet and TL x HF, Loyalist and TL x HF have, at all relevant times, operated as a single entity over which Loyalist and its leadership exercise total control. Compl. ¶¶ 17-37. Accordingly, plaintiffs seek to hold Loyalist liable for TL x HF's breach of contract based on the doctrine of corporate veil piercing. Id. ¶¶ 58, 70.

On October 14, 2025, Loyalist removed the New York Action to federal court. See Def.'s Notice of Removal and Pet'n ("Notice of Removal"), ECF No. 1. Thereafter, Loyalist moved to dismiss the action on various grounds and, in the alternative, to compel arbitration. See ECF Nos. 5, 14. In support of its motion to compel arbitration, Loyalist relied on the same arbitration agreement that was at issue in the prior SDNY Action, namely, the arbitration provision contained in the Loyalist LLC Agreement. Plaintiffs opposed both motions and moved to remand the action to state court. See ECF Nos. 12, 16.

7

For the reasons set forth below, the Court, after hearing argument on the motions, granted by Bottom-Line Order defendant's motion to compel arbitration of Zhang's claims and plaintiff's motion to remand CollegeStreet's claims, and denied as moot defendant's motion to dismiss.

## II.  Motion to Remand

The Court turns first to plaintiff's motion to remand. "To hear a case removed from state court, a federal court must have both subject matter jurisdiction and removal jurisdiction." Republic of Kazakhstan v. Chapman, 585 F. Supp. 3d 597, 603 (S.D.N.Y. 2022). Plaintiffs argue that the Court lacks both. In response, Loyalist contends that the Federal Arbitration Act (FAA) supplies both removal jurisdiction and subject matter jurisdiction over this dispute because of the claims' relation to an arbitration agreement covered by the New York Convention. See Notice of Removal ¶¶ 21, 28, 32. It is defendant's burden to demonstrate that removal was proper. Calif. Pub. Emps.' Ret. Sys. V. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004).

The New York Convention (formally the Convention on the Recognition and Enforcement of Foreign Arbitral Awards) governs the "recognition and enforcement of commercial arbitration agreements in international contracts." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974). Chapter 2 of the FAA implements its terms. See Molecular Dynamics, Ltd. v. Spectrum Dynamics Medical Ltd., 143 F.4th 70, 86 (2d Cir. 2025). The parties agree that the arbitration provision at issue here is governed by the New York Convention (and, by

8

extension, Chapter 2 of the FAA) but disagree about what that means for the Court's jurisdiction over the action.

**A. <u>Removal Jurisdiction</u>**

Under Chapter 2 of the FAA, a defendant may remove an action to federal court "[w]here the subject matter of [the] action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [New York] Convention." 9 U.S.C. § 205. Courts in this District agree that this provision confers broad removal jurisdiction. <u>See, e.g.</u>, <u>Schorr v. Am. Arb. Ass'n</u>, 583 F. Supp. 3d 608, 619-20 (S.D.N.Y. 2022); <u>Goel v. Ramachandran</u>, 823 F. Supp. 2d 206, 212 (S.D.N.Y. 2011). When assessing whether removal was proper, "the relevant inquiry is not whether the parties to the removed action were bound by the relevant arbitration agreement," but rather "whether the state[-court] action 'relates to' the arbitration agreement" in question. <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust</u>, 863 F. Supp. 2d 351, 356 (S.D.N.Y. 2012). This standard is satisfied whenever the arbitration agreement could "'conceivably' affect the outcome" of the action. <u>Id.</u>[2]

---

[2] Although the Second Circuit has not weighed in on the scope of the removal authority conferred by § 205, other circuits agree that it is broad. <u>See</u> <u>Beiser v. Weyler</u>, 284 F.3d 665, 669 (5th Cir. 2002) ("Whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit."); <u>Infuturia Global Ltd. v. Sequus Pharms., Inc.</u>, 631 F.3d 1133, 1138 (9th Cir. 2011) (adopting the Fifth Circuit's interpretation and explaining that the "phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes"); <u>Reid v. Doe Run Re. Corp.</u>, 701

This permissive standard is easily met in this case. Because Loyalist contends that plaintiffs' claims are governed by the arbitration provision contained in the Loyalist LLC Agreement (an arbitration agreement the parties agree falls under the New York Convention) and seeks to enforce that agreement here, that arbitration agreement "conceivably affects" the outcome of this case. This is so regardless of whether the arbitration provision ultimately binds the parties in the context of this dispute. See, e.g., Goel, 823 F. Supp 2d at 216 ("[R]emoval is proper whenever a defendant contends that an arbitration clause could provide a defense, as long as that contention is not absurd or impossible."); see also 9 U.S.C. § 205 ("[T]he ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.").

In response, plaintiffs advance arguments as to why the arbitration clause in the Loyalist LLC Agreement does not require them to arbitrate their claims. See Mem. of Law in Support of Pl.'s Mtn. for Remand ("Remand Mem.") at 4-5, ECF No. 12. Removing an action based on § 205 does not depend on adjudicating the merits of a defendant's claim to arbitration. It is enough that Loyalist contends that the arbitration agreement could conceivably affect the case because Loyalist seeks to compel arbitration under its terms. See Goel, 823 F. Supp. 2d at 216-17 (explaining that removal was proper

_____

F.3d 840, 844 (8th Cir. 2012) ("[j]oining the Fifth and Ninth Circuits").

in a case in which "the arbitration agreement, which had been signed by the removing defendant, was a possible defense because the defendant was seeking to compel the non-signatory plaintiff to arbitrate the parties' dispute"). Section 205 therefore supplies removal jurisdiction in this case.

B. **Subject Matter Jurisdiction**

It is not enough, however, for the FAA to confer removal jurisdiction. The Court must also have subject matter jurisdiction to hear the parties' dispute. Loyalist contends that § 203 of the FAA supplies such jurisdiction.

As a general matter, the FAA does not bestow federal jurisdiction apart from creating a mechanism for removal. Instead, "it requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Molecular Dynamics, 143 F.4th at 86 (quoting Landau v. Eisenberg, 922 F.3d 495, 497 (2d Cir. 2019)). In New York Convention cases, however, § 203 provides one such independent basis: "An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

As the Supreme Court has explained, this provision "expressly grant[s] federal courts jurisdiction to hear actions seeking to enforce an agreement . . . falling under the [New York] Convention." Vaden v. Discover Bank, 556 U.S. 49, 59 n.9 (2009). It is therefore

11

well-established that the FAA confers on federal courts jurisdiction to consider a motion to compel arbitration based on an agreement governed by the New York Convention, regardless of the court's power to hear the underlying dispute. See Goel, 823 F. Supp. 2d at 215; Republic of Kazakhstan, 585 F. Supp. 3d at 605-06. Because the parties agree that the arbitration provision at issue falls under the New York Convention, this Court has jurisdiction to consider a motion to compel arbitration based on its terms.

Once again, the arguments plaintiffs muster in response are primarily directed at the merits of Loyalist's motion to compel arbitration. See Remand Mem. at 6-8. However, contentions that a defendant's motion to compel arbitration lacks merit do not go to the court's jurisdiction to hear or decide the motion. See Republic of Kazakhstan, 585 F. Supp. 3d at 607. So long as the defendant "make[s] a good faith argument that [it is] entitled to seek arbitration against [the plaintiff] pursuant to [the identified agreement]," as Loyalist does here, it has, "for subject matter jurisdiction purposes, adequately pleaded that [it is] seeking to compel arbitration pursuant to an agreement that falls under the Convention." Id. at 606-07. Thus, § 203 is sufficient to support the Court's jurisdiction to decide the motion.

However, the subject matter jurisdiction supplied by § 203 is limited. Under that provision, the Court has jurisdiction over plaintiffs' claims "only to the extent of compelling arbitration." Republic of Kazakhstan, 585 F. Supp. 3d at 606; see also Holzer v.

Mondadori, No. 12 Civ. 5234 (NRB), 2013 WL 1104269, at *6 (S.D.N.Y. Mar. 14, 2013) (under § 203, the court "only has subject matter jurisdiction over plaintiffs' claims if they are subject to arbitration"); Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 n.6 (2d Cir. 2011) (discussing the scope of federal court jurisdiction in New York Convention cases). Thus, to the extent that the motion to compel arbitration is denied (and, as the Court explains below, it does deny the motion in part), § 203 does not give the Court subject matter jurisdiction over the remaining claims. Indeed, the underlying dispute in this case involves only state-law claims for breach of contract and tortious interference with contract. Loyalist advances no basis for the Court exercising jurisdiction over those claims apart from § 203.[3]

Loyalist does argue that § 203's jurisdictional grant "extends to 'other measures . . . in aid of arbitration'" and that the Court therefore may exercise jurisdiction over this action "in aid of" the arbitration it ordered in the earlier SDNY Action. See Mem. of Law in Supp. Of Def.'s Opp. to Pl.'s Mtn. for Remand ("Def.'s Opp.") at 13, ECF No. 17 (quoting Schorr, 583 F. Supp. 3d at 617). Keeping this action in federal court, Loyalist urges, will ensure that a state

---

[3] Loyalist does not allege that diversity jurisdiction exists and, as plaintiffs point out, it does not. See Remand Mem. at 7 n.1. As an LLC, Loyalist takes on the citizenship of each of its members. GH Am. Energy LLC v. Greenalia Wind Power Blue Hills, LLC, No. 1:24-cv-05645, 2025 WL 919652, at *4 (S.D.N.Y. Mar. 26, 2025). Accordingly, since Zhang, a citizen of China, is also a member of Loyalist, the parties are not diverse.

court does not decide the corporate veil-piercing issue that is meant to be addressed in the previously-ordered arbitration of Zhang's fiduciary-breach claim. Id.

This argument is unpersuasive for two reasons. First, to the extent that § 203's jurisdictional grant does extend to so-called "measures in aid of arbitration," those measures are decidedly limited. Miller v. Oscar Gruss & Son, Inc., No. 24-CV-00239, 2025 WL 1733258, at *5 (S.D.N.Y. June 23, 2025); see also Republic of Kazakhstan, 585 F. Supp. 3d at 605 (explaining that § 203's jurisdictional grant is limited to matters "tightly intertwined with the arbitration proceedings or awards"). To be sure, the New York Convention applies to -- and § 203's jurisdictional grant covers -- "necessary ancillary proceedings that ensure the proper functioning of [an] underlying arbitration." Molecular Dynamics, 143 F.4th at 87 (quoting Jones Day v. Orrick, Herrington & Sutcliffe, LLP, 42 F.4th 1131, 1139 (9th Cir. 2022) (emphasis in original)). Proceedings of this nature include, for example, the issuance of a preliminary injunction during the pendency of an underlying arbitration, the attachment of property to satisfy a potential arbitration award, or the enforcement of a summons compelling a witness to appear at an arbitration hearing. Id. Loyalist identifies no measures of this kind at issue in this action.

Second, Loyalist's contention that the resolution of this action will interfere with the arbitration previously ordered in the SDNY Action is, in any event, unfounded. The Court compelled arbitration in the SDNY Action only of Zhang's fiduciary-breach claim against

Matthew Ritz, Loyalist's manager. That claim, which concerns Ritz's duties as manager, raises distinct legal issues from the breach of contract and tortious interference with contract claims at issue in this action. See CollegeStreet I, 777 F. Supp. 3d at 251 (noting the "fundamental difference" between plaintiffs' breach of contract claim and the separate fiduciary-breach claim between Ritz and Zhang). Moreover, the resolution of Zhang's fiduciary-breach claim in no way depends on addressing the corporate veil-piercing argument at issue here, as the fiduciary-breach claim concerns Ritz's liability as manager, not the liability of Loyalist for its subsidiary's obligations. Thus, there is no reason to conclude that allowing this action to proceed in state court would interfere in any way with the previously ordered arbitration. The mere factual overlap between the two actions is insufficient to support jurisdiction.

Accordingly, because (for the reasons explained below) the Court denies the motion to compel arbitration of CollegeStreet's claims, there is no independent basis for federal jurisdiction over those claims. Even if the Court could exercise supplemental jurisdiction given the factual overlap between CollegeStreet's and Zhang's claims, the Court declines to do so here. See, e.g., Republic of Kazakhstan, 585 F. Supp. 3d at 605-06 (declining to exercise supplemental jurisdiction over state-law claims after referring to arbitration claims over which court had original jurisdiction). Because the Court refers Zhang's claims to arbitration, CollegeStreet's state-law claims predominate and judicial economy dictates that those claims be heard

in state court. Id. at 606; see also 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction over claim if, inter alia, it "substantially predominates" or the court "has dismissed all claims over which it has original jurisdiction"). Accordingly, the Court grants the motion to remand with respect to CollegeStreet's claims.

## III.   Motion to Compel Arbitration

The Court turns next to Loyalist's motion to compel arbitration. Loyalist asks the Court to refer this action to arbitration, in reliance on an arbitration provision contained in the Loyalist LLC Agreement, quoted in full above. See Loyalist LLC Agreement § 14.10. Loyalist argues that both Zhang and CollegeStreet are bound by this provision and that Loyalist is therefore entitled to an order compelling arbitration of the dispute.

Under the FAA, a party to an arbitration agreement may seek a judicial order compelling arbitration in accordance with the agreement's terms. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229-30 (2d Cir. 2016) (citing 9 U.S.C. § 4). A court faced with such a petition typically "must decide two questions: Whether the parties agreed to arbitrate, and whether the claims fall within the scope of the arbitration agreement." WTA Tour, Inc. v. Super Slam Ltd., 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018) (citing David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 249 (2d Cir. 1991)). The party seeking to compel arbitration bears the burden of

16

demonstrating that an agreement to arbitrate was made. Zachman v. Hudson Valley Federal Credit Union, 49 F.4th 95, 101-02 (2d Cir. 2022).

### A. Zhang

As Loyalist points out, and plaintiffs do not dispute, the Court already determined in the earlier SDNY Action that Zhang, as a member of Loyalist, is bound by the Loyalist LLC Agreement's arbitration clause, whether based on the terms of the CUPAR Agreement, to which she acceded, or as a matter of Delaware corporate law. CollegeStreet I, 777 F. Supp. 3d at 247; see also 6 Del. C. § 18-101(9) (under Delaware law, a member of a limited liability company "is bound by the limited liability company agreement whether or not the member . . . executes the limited liability agreement"). That same conclusion is compelled here.

Ordinarily, the Court would next ask whether Zhang's claims "come[] within the scope of the arbitration agreement." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2022). Here, however, the Court must "determine who -- the court or the arbitrator -- properly decides" this question. Id. at 128. When a contract evinces the parties' intent to delegate "threshold arbitrability questions," a court is obligated to "respect the parties' decision as embodied in the contract" and to compel arbitration without first addressing the agreement's scope. Henry Schein, Inc. v. Archers & White Sales, Inc., 586 U.S. 63, 65 (2019). The parties' agreement to delegate such questions must, however, be "clea[r] and unmistakabl[e]." First Options of Chicago, Inc. v. Kaplan, 514 U.S.

17

938, 844 (1995) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)) (alterations in original).

The arbitration agreement at issue here contains such a "clear and unmistakable" delegation. It expressly provides that "[a]ny controversy concerning whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of [the arbitration agreement] shall be determined by the arbitrator." Loyalist LLC Agreement § 14.10 (emphasis added). This language plainly contemplates that the arbitrability of any dispute between the parties is a matter for the arbitrator to decide.

Plaintiffs' counterarguments mistakenly focus on whether the underlying dispute regarding Loyalist/TL x HF's alleged breach of the Transfer Agreement is arbitrable. But that is the very question that the delegation agreement leaves to the arbitrator to decide. Indeed, the Court would be required to compel arbitration even if it considered Loyalist's arguments that the underlying dispute falls within the scope of the arbitration agreement to be "wholly groundless." Henry Schein, 586 U.S. at 65.

The cases plaintiffs cite do not alter this conclusion. None involves a contract containing an explicit delegation clause. All involve other contractual features that could also demonstrate a "clear and unmistakable" intent to delegate arbitrability. But whether one could infer from other features of the arbitration agreement at issue here the requisite intent to delegate questions of arbitrability is

18

irrelevant because, as noted above, this arbitration agreement is express.

Accordingly, the plain text of the arbitration agreement obligates the Court to refer Zhang's claims to arbitration. It will be the arbitrator's responsibility to determine whether her claims ultimately fall within the agreement's scope.

### B. CollegeStreet

Unlike Zhang, it is undisputed that CollegeStreet is not itself a member of Loyalist or a signatory to any agreement incorporating the arbitration clause contained in the Loyalist LLC Agreement. Loyalist contends that CollegeStreet may nonetheless be bound by the terms of that arbitration agreement. In certain circumstances, non-signatories may be bound by an arbitration agreement based on ordinary principles of contract and agency law. See Thomson-CSF, S.A. v. Am Arb. Assoc., 64 F.3d 773, 776 (2d Cir. 1995). Loyalist advances three such arguments: (i) veil-piercing/alter ego, (ii) preclusion of inconsistent litigating positions, and (iii) estoppel.[4]

As an initial matter, plaintiffs assert that Loyalist is barred from relitigating this issue because the Court already decided in the earlier SDNY Action that CollegeStreet is not bound by the LLC

---

[4] Neither party addresses which law governs these contentions. Both parties cite cases from the Second Circuit and the Southern District of New York applying New York law, even though Loyalist elsewhere contends that the contract is governed by Delaware law. In the absence of a contrary contention by the parties, the Court analyzes their arguments using the body of caselaw that the parties treat as applicable.

Agreement's arbitration provision. See CollegeStreet I, 777 F. Supp. 3d at 249-50. Collateral estoppel "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)).

Collateral estoppel, however, generally only applies in subsequent suits "between the same parties or their privies." Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008). Loyalist, against which the plaintiffs assert collateral estoppel in this action, was only a nominal defendant in the prior SDNY Action. Accordingly, because Loyalist did not have a "full and fair opportunity to litigate" this issue in the prior SDNY Action, collateral estoppel generally would not preclude it from litigating the issue here. Taylor, 553 U.S. at 892 (application of issue preclusion is limited to parties who had a "full and fair opportunity to litigate" in the prior action (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)); see also, e.g., Penda Corp. v. United States, 44 F.3d 967, 972 (Fed. Cir. 1994) (explaining that plaintiff could not assert issue preclusion in a future action against a nominal defendant to the instant action).

CollegeStreet counters that collateral estoppel nonetheless applies against Loyalist because Loyalist is in privity with TL x HF, which was a party to the prior SDNY Action, pointing to Loyalist's own contention, in support of its motion to dismiss, that the "defendants

in both actions are also in privity." Def.'s Mem. in Support of MTD ("MTD Mem.") at 18, ECF No. 6; see also Fulani v. Bentsen, 862 F. Supp. 1140, 1148 (S.D.N.Y. 1994) ("[C]ollateral estoppel binds not only the actual parties to a lawsuit, but also their privies."). Loyalist disputes this characterization of its submission and raises several additional reasons why collateral estoppel should not apply. See Def.'s Reply in Support of Mtn. to Compel Arb. ("Def.'s Reply") at 3-5, ECF No. 20.

Ultimately, the Court need not resolve this issue. Even if Loyalist is correct that collateral estoppel does not preclude it from relitigating the application of the arbitration agreement to CollegeStreet, Loyalist still has not demonstrated that it is entitled to enforce the arbitration agreement against CollegeStreet under any of the theories for non-party enforcement that it advances. For the reasons set forth below, the Court concludes that CollegeStreet is not bound by the arbitration provision in the Loyalist LLC Agreement.

### 1. Veil-Piercing/Alter Ego

Loyalist first argues that CollegeStreet should be bound by the arbitration provision contained in the Loyalist LLC Agreement as Zhang's alter ego. In certain circumstances, "the corporate veil may be pierced and a party may be held bound to arbitrate as the signatory's alter ego." Interocean Ship Co. v. Nat'l Shipping & Trading Corp., 523 F.2d 527, 537 (2d Cir. 1975), cert. denied, 423 U.S. 1054 (1976). To warrant such treatment, an owner must so dominate the company that the company "cannot be said to have any independent existence of its own."

21

Coastal States Trading, Inc. v. Zenith Navigation, S.A., 446 F. Supp. 330, 336-37 (S.D.N.Y. 1977). Loyalist argues that CollegeStreet and Zhang satisfy this standard because Zhang is the sole owner of CollegeStreet, controls its entire operations, and Zhang and CollegeStreet have repeatedly held themselves out as one and the same. See Mem. of Law in Support of Def.'s Mtn. to Compel Arb. & Stay Action ("Arb. Mem.") at 11, ECF No. 15.

The Court is not persuaded. First, under New York law, piercing the corporate veil is generally appropriate only when the owner uses its domination over the corporation "to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997); see also McKenna Long & Aldridge LLP v. Ironshore Specialty Ins. Co., No 14-cv-6633, 2015 WL 144190, at *8 (S.D.N.Y. Jan. 12, 2015) ("A non-signatory 'may be bound to arbitrate where it exercised complete control over a signatory and employed that domination to injure another signatory to the agreement.'" (quoting Masefield AG v. Colonial Oil Indus., Inc., No. 05 Civ. 2231, 2005 WL 911770, at *6 (S.D.N.Y. Apr. 18, 2005))). Loyalist makes no persuasive argument that this is the case here.

Second, Loyalist's contention that Zhang and CollegeStreet have held themselves out as one and the same is based on statements made by Zhang and by CollegeStreet in the California lawsuit and in the prior SDNY Action in which they represented that CollegeStreet (rather than Zhang) is the owner of the Loyalist shares that were transferred pursuant to the Transfer Agreement. See Arb. Mem. at 11. But

22

CollegeStreet asserts that these representations were made in error and were corrected in the amended complaint it filed in the SDNY Action. See MOL in Opp. to Def.'s Mtn. to Compel Arb. and MTD ("Pl.'s Opp.") at 9, ECF No. 16. In any event, two instances of plaintiffs incorrectly describing CollegeStreet, rather than Zhang, as the owner of the Loyalist shares (at least one of which was corrected) hardly demonstrates a total "abandonment of separateness" between CollegeStreet and its owner. Thomson-CSF, 64 F.3d at 777-78.

Finally, Loyalist does not even mention or make any attempt to satisfy the multi-factor, "fact-specific" inquiry that courts undertake to determine when corporate veil-piercing is appropriate. In re South African Apartheid Litigation, 617 F. Supp. 2d 228, 271 (S.D.N.Y. 2009;) see also Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997) (discussing non-exhaustive list of ten factors relevant to determining "complete control"). And the considerations it does point to -- the fact that Zhang is the sole owner of CollegeStreet combined with two statements regarding the ownership of Loyalist shares -- plainly are not enough to satisfy that rigorous standard. Therefore, Loyalist has not shown that the arbitration agreement contained in the Loyalist LLC Agreement can be enforced against CollegeStreet based on a veil-piercing/alter ego theory.

### 2. Inconsistent Litigating Positions

Loyalist next argues that "CollegeStreet should be precluded from arguing that it is not bound by the [Loyalist] LLC Agreement's

arbitration provision based upon its prior inconsistent statements," namely the assertions made in prior litigation that CollegeStreet (not Zhang) is the owner of the Loyalist stock. See Arb. Mem. at 12. But, as noted above, plaintiffs corrected that representation and amended their complaint in the prior SDNY Action. Plaintiffs also voluntarily dismissed the California action. Thus, plaintiffs did not "successfully maintain[]" that assertion in a prior proceeding. Petition of Transrol Navegacao S.A., 782 F. Supp. 848, 853 (S.D.N.Y. 1991) (quoting Konstantinidis v. Chen, 626 F.2d 933, 937 (D.C. Cir. 1980)). Nor is there any indication that Loyalist has ever acted in reliance on it. See id. Thus, there is no reason to bind CollegeStreet to the Loyalist LLC Agreement's arbitration provision in order "to avoid unfair results and unseemliness." Id. at 852 (quoting 18 Wright & Miller, Federal Practice and Procedure § 4477).

### 3. Estoppel

Lastly, Loyalist argues that CollegeStreet should be "estopped from avoiding arbitration" because it "direct[ly] benefit[ted] from [the] contract that contains [the] agreement to arbitrate." Arb. Mem. at 12. A party that "knowingly exploit[s] an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." Trina Solar US, Inc. v. Jasmin Solar Pty Ltd, 954 F.3d 567, 572 (2d Cir. 2020); see also McKenna Long & Aldridge, LLP v. Ironshore Spec. Ins. Co., 2015 WL 144190, at *9 (S.D.N.Y. Jan. 12, 2015) (a party can be required to arbitrate when it "receives a 'direct benefit' from a contract containing an

24

arbitration clause"). Loyalist contends that this doctrine applies here, arguing that CollegeStreet received tangible benefits from the Loyalist LLC Agreement because Zhang's receipt of $350,000 in Loyalist equity satisfied a promise made to CollegeStreet in the Transfer Agreement.

The Court already addressed and rejected exactly this argument in the earlier SDNY Action. See CollegeStreet I, 777 F. Supp. 3d at 249-50 (arguing that "CollegeStreet should . . . be estopped from denying [its] duty to arbitrate" because it "received tangible benefits from the LLC Agreement," namely, "the benefit of the Loyalist membership units (valued at $350,000) that were issued as consideration for CollegeStreet's agreement to the Transfer Agreement"). Even if Loyalist is not collaterally estopped from relitigating the issue, the Court sees no reason to deviate from its reasoning as set forth in the earlier action. As the Court explained there, notwithstanding the importance of the transfer of Loyalist equity to the overall transaction between the parties, in order to bind a party to an arbitration agreement it did not sign,

> the Second Circuit has required a closer relationship between the purported benefit and the agreement containing the arbitration provision: "[t]he benefits of exploiting the agreement . . . must flow directly from the agreement, rather than indirectly from the contractual relationship of the parties to the agreement." Trina Solar, 954 F.3d at 572. Caselaw confirms that College Street falls in the latter category. See id. at 572-73 (concluding that estoppel did not apply even though the party "benefited from the contractual relationship," because the contract itself did not provide it "any direct benefit"); cf. Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC, No. 11-cv-6804, 2012 WL 527209, at *5 (S.D.N.Y. Feb. 17, 2012) (finding that party was

estopped from arguing that it was not subject to a forum selection clause when it had claimed entitlement to payment of its legal defense costs under the same contract). Here, although College Street benefitted, at least in a colloquial sense, from its CEO's owning Loyalist equity, it did not receive any concrete benefit from the [Loyalist] LLC Agreement itself, which outlines the rights of and restrictions on Loyalist members and managers.

CollegeStreet I, 777 F. Supp. 3d at 249-50.

Loyalist provides no fresh arguments to rebut this conclusion. Accordingly, CollegeStreet, as a non-signatory to the arbitration agreement Loyalist invokes, is not bound by that agreement. The Court therefore denies Loyalist's motion to compel arbitration of CollegeStreet's claims and, for the reasons set forth above, remands those claims to New York state court.

## IV.  Motion to Stay

Finally, Loyalist argues that the Court should stay the action, citing Section 3 of the FAA and the Court's inherent power to stay the balance of an action when some claims are sent to arbitration. See 9 U.S.C. § 3; Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991). To the extent that Zhang's claims are subject to arbitration, a stay of her claims under Section 3 is mandatory. See CollegeStreet I, 777 F. Supp. 3d at 251. Accordingly, the Court grants the stay with respect to Zhang's claims.

As to the remaining claims, however, for the reasons described above, the Court grants plaintiffs' motion to remand. It therefore denies the request to stay those claims.

## V.    <u>Conclusion</u>

For the reasons set forth above, defendant's motion to compel arbitration is granted as to Zhang's claims and denied as to CollegeStreet's claims. Plaintiffs' motion to remand is likewise denied as to Zhang's claims and granted as to CollegeStreet's claims. The motion to dismiss is denied as moot.

The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

New York, NY
March 20, 2025

JED S. RAKOFF, U.S.D.J.

27